UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: FIBER OPTEK INTERCONNECT CORP., | Chapter 7 |
| Debtor. | Case No. 05-30015 (CGM) |
| | Adv. Proc. No. 07-9015 |
| MICHAEL O'LEARY, as Trustee, | |
| Plaintiff, | No. 09 Civ. 3594 (RJH) |
| - against - | |
| MICHAEL S. PASCAZI and FRANK P. ZARZEKA, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Richard J. Holwell, District Judge:

Appellant Michael O'Leary ("Trustee"), as Chapter 7 Trustee, appeals from an order of the United States Bankruptcy Court for the Southern District of New York denying his motion for summary judgment and dismissing this adversary proceeding to avoid a transfer by defendant Michael S. Pascazi ("Pascazi"), a principal of debtor Fiber Optek Interconnect Corp. ("Fiber Optek"). The Trustee argues that the Bankruptcy Court erred in declining to apply collateral estoppel to a state court judgment so as to prevent Pascazi from asserting that the transfer at issue was not fraudulent. The Trustee contends that the doctrine of collateral estoppel applies because the state court actually decided that the transfer was fraudulent and Pascazi had every opportunity to argue the contrary. For the reasons stated below, the order of the Bankruptcy Court is affirmed.

1

## BACKGROUND

The following facts are taken from the record in the adversary proceeding, *see*

*O'Leary v. Pascazi*, Adversary Proceeding 07-09015 (Bankr. S.D.N.Y.), and the record in

the Chapter 7 bankruptcy proceeding, *see In re Fiber Optek Interconnect Corp.*, Ch. 7

Case No. 05-30015 (Bankr. S.D.N.Y.).[1]

Fiber Optek supplies fiber optic network equipment and services.  Its principals are

Pascazi and Frank P. Zarzeka ("Zarzeka").  On February 23, 1998, Fiber Optek entered

into an agreement with Optek Consultants, Inc. ("Consultants") whereby Fiber Optek

agreed to pay Consultants ten percent of all gross proceeds Fiber Optek earned from

contracts Consultants secured for Fiber Optek.  (A.P. D.I. 128 Ex. F.)  The agreement

referred to one contract in particular:  a contract between Fiber Optek and Five Com, Inc.

whereby Fiber Optek agreed to provide materials and perform work for Five Com.  (AP

D.I. 115 ("Trustee Ex.") Ex. O. at 1.)  It is undisputed that from October 1998 to early

2001, Fiber Optek performed under the Five Com contract and earned gross proceeds.  (*Id.*

at 2.)  During that period, Five Com changed its name to Neon Optica, Inc. ("Neon").  (*Id.*)

In 2001, a dispute arose between Neon and Fiber Optek regarding their agreement.

On August 16, 2001, Neon brought suit in this district against Fiber Optek, Pascazi, and

Zarzeka, No. 01-CV-7661 ("the Neon Litigation").  (*Id.*)  Fiber Optek brought 59

counterclaims to Neon's suit, none of which sought any compensation for Pascazi or

Zarzeka.  (*Id.* at 5.)  In January 2002, the parties settled the Neon Litigation pursuant to an

agreement ("Settlement Agreement") which provided that Neon would pay $350,000 to

Fiber Optek and $625,000 each to Pascazi and Zarzeka.  (*Id.*)  Paragraph 1.3 of the

---

[1] References to "AP D.I" refer to the adversary proceeding docket.  References to "Bankr.
D.I." refer to the bankruptcy proceeding docket.

Settlement Agreement provided that "the signature of Fiber Optek on this Settlement Agreement shall constitute direction by [Fiber Optek] to make payments of settlement funds directly to Messrs. Pascazi and Zarzeka." (*Id.* at 6.)

On February 1, 2002, Neon transferred funds in the amounts specified in the Settlement Agreement. (A.P. D.I. 128 Ex. F.) On February 15, 2002, Pascazi allegedly transmitted to Consultants a Final Commission Reconciliation Statement which represented that Neon had paid $350,000 to Fiber Optek as part of the settlement. (Trustee Ex. K at ¶ 41.) The Reconciliation Statement did not disclose the $1.25 million that had been paid to Pascazi and Zarzeka as part of the settlement. (*Id.*)

On March 22, 2002, Consultants brought suit (the "Consultants Litigation") against Fiber Optek in New York Supreme Court seeking damages for unpaid commissions unrelated to the Settlement Agreement. (*See* Trustee Ex. K.) After filing the initial complaint, Consultants discovered the complete terms of the Settlement Agreement and amended its complaint to add Pascazi and Zarzeka as individual defendants. In its amended complaint, Consultants asserted two claims relevant here. For its third cause of action, Consultants alleged in relevant part as follows:

- that "of the fifty nine counterclaims alleged by Optek, Pascazi and Zarzeka [in the Neon Litigation], all damages alleged as against NEON were for damages allegedly suffered by Optek . . . and not damages suffered by Pascazi or Zarzeka in their individual capacities";

- that "Pascazi and Zarzeka used their corporate status to direct and cause the Settlement Agreement to include a provision that both Pascazi and Zarzeka were to receive the sum of $625,000 each from NEON which was otherwise due and payable to Optek";

- that the payments to Pascazi and Zarzeka were "without consideration, as demonstrated by the language included in the Settlement Agreement at [Paragraph 1.3]";

- that the Final Commission Reconciliation falsely represented that Neon had paid $350,000;

- that Fiber Optek knew that the Final Commission Reconciliation was false;

- that Consultants relied on Fiber Optek's misrepresentation;

- that "diversion of payment to . . . Pascazi[] and Zarzeka, and the resulting transfer of corporate assets was done for the purpose of avoiding Optek's obligation to Fiber Consultants"; *and*

- that the "diversion of the aggregate sum of $1,250,000 by Pascazi and Zarzeka was a fraudulent conveyance."

(Trustee Ex. K ¶¶ 38-48.).  Consultants alleged that these actions had caused damage "in a sum not less than $125,000," or ten percent of the alleged $1.25 million fraudulent conveyance.  (*Id.* at ¶51.)

Consultants' fourth cause of action was similar.  As to that cause of action, Consultants incorporated its allegations as to its third cause of action and further alleged in relevant part as follows:

- that "using their status as corporate officers, Pascazi and Zarzeka exercised their collective control over Optek, in the context of the Settlement Agreement, to direct that NEON remit directly to Pascazi and Zarzeka the aggregate sum of $1,250,000";

- that "[p]ayment of the aforementioned $1,250,000 to Pascazi and Zarzeka directly was made to hinder and delay Fiber Consultants' right to collect Commissions from Optek, pursuant to the terms of the Agreement, in the sum of $1,250,000";

- that "NEON's payment of $1,250,000 to Pascazi and Zarzeka [wa]s a fraudulent conveyance pursuant to Debtor and Creditor Law Section 276"; *and*

- that "payment of $1,250,000 to Pascazi and Zarzeka by NEON is void and should be set aside."

(*Id.* at ¶¶ 53-56.)  Consultants alleged that, by reason of these actions, Consultants was "entitled to judgment as against Pascazi and Zarzeka in a sum not less than $125,000.00." (*Id.* at ¶ 57.)

4

On July 3, 2003, Fiber Optek, Pascazi and Zarzeka moved to dismiss seven of Consultants' claims, including the third and fourth Causes of Action.  On August 15, 2003, Consultants opposed that motion and filed its own motion for summary judgment on, *inter alia*, its third and fourth causes of action.  (Trustee Ex. N.)

In an October 27, 2003 Decision and Order, Justice James V. Brands denied the defendants' motion to dismiss and granted summary judgment for Consultants on its third cause of action in the amount of $62,500 against Pascazi and $62,500 against Zarzeka. With respect to the motion to dismiss the third cause of action, Justice Brands noted that this claim "ha[d] as its basis, a claim of diversion of funds embedded in a type of fraudulent conveyance, notably that settlement funds to be paid to Fiber Optek were diverted to defendants Pascazi and Zarzeka in order to avoid the payment of commission." (Trustee Ex. O at 3-4.)  Justice Brands then found that this claim was not duplicative of Consultants' breach of contract claim.  (*See id.* at 4.)

With respect to summary judgment on the third cause of action, Justice Brands found that he was

> constrained to examine the agreement between the parties, the lawsuit in Federal District Court and settlement of the same by Neon and Fiber Optek along with the individual defendants to ascertain whether there is a question of fact remaining to determine whether there is justification for the defendants to have individually received $625,000 at the time of settlement without being obligated to pay commissions thereon to plaintiff.

(*Id.* at 5).  Justice Brands found that the Neon Litigation, "while ostensibly between Neon and the corporate defendant and individual defendants Pascazi and Zarzeka was, in reality, a dispute between two corporations," a "characterization . . . exemplified by the fact that of the 59 counterclaims interposed by Fiber Optek, none of them seek compensation for the individual defendants Pascazi or Zarzeka."  (*Id.*)  Moreover, Justice Brands observed that

the "language detailing that the individual payments were being made at the direction Fiber Optek" made it "apparent that Neon itself was concerned that the settlement would fulfill any obligations it had to the corporate defendant Fiber Optek." (*Id.* at 6.) Yet Justice Brands noted that "[a]t no point d[id Pascazi] come forward and lay bare his justification for being paid individually by Neon" and that neither Pascazi nor Zarzeka "sought to justify receipt of those monies in any fashion." (*Id.*) Accordingly, in Justice Brands's view, "[i]t [wa]s a very small leap to find that the payment is due to the corporation . . . ." (*Id.*)

With respect to the fourth cause of action under DCL § 276, Justice Brands noted that "direction by the corporation to make direct payments to the defendants demonstrates a clear intent to divert funds which otherwise would have flowed to the plaintiff." (*Id.* at 4.) Justice Brands therefore denied the motion to dismiss Consultants' fourth cause of action. However, Judge Brands did not grant summary judgment to Consultants on its fourth cause of action. In fact, Justice Brands's decision does not in any way dispose of Consultants' motion for summary judgment as to its fourth cause of action. Nor did the judgment that Justice Brands entered against Pascazi and Zarzeka on December 8, 2003 reveal any disposition of Consultants' fourth cause of action. (*See* Trustee Ex. P.)

On December 11, 2003, Pascazi and Zarzeka filed a notice of appeal of Justice Brands's decision to the Appellate Division. (*See* Trustee Ex. Q.) Zarzeka later withdrew his appeal prior to oral argument. (*See* Trustee Ex. R.) On February 22, 2005, the Second Department of the Appellate Division modified a part of Justice Brands's order unrelated to the grant of summary judgment on Consultants' third cause of action and affirmed the rest of the order. *See Fiber Consultants, Inc. v. Fiber Optek Interconnect*

*Corp.*, 792 N.Y.S.2d 89 (2d Dep't 2005).  Pascazi moved for reargument and also for leave

to appeal to the Court of Appeals.  Both of those motions were summarily denied.  *See* 831

N.E.2d 971 (N.Y. 2005); Trustee Ex T.

On February 16, 2005, Pascazi, his former wife Kathleen Pascazi, and his brother,

Ennio Pascazi, commenced an involuntary bankruptcy proceeding against Fiber Optek

under Chapter 7.  (Bankr. D.I. 1.)  On March 12, 2007, the Trustee filed an adversary

proceeding pursuant to 11 U.S.C. § 544(b)(1) seeking, *inter alia*, disgorgement of $1.125

million, a sum equal to the $1.25 million alleged to have been fraudulently conveyed to

Pascazi and Zarzeka less the $125,000 paid to satisfy the judgment in the Consultants

Litigation.  (Bankr. D.I. 60 ("Compl.").)  On August 20, 2008, the Trustee filed an

amended complaint asserting only a claim for disgorgement of the $1.125 million.  (AP

D.I. 80.)  The Trustee's complaint essentially recited the foregoing history and then alleged

as follows:

> 35.  [Pascazi's and Zarzeka's] course of conduct, by which $1.25 million in assets
> which belonged to Fiber Optek was conveyed to its two officers and shareholders
> Pascazi and Zarzeka, was undertaken with actual intent to hinder, delay or defraud
> Fiber Consultants in its effort to collect commissions due under Fiber Optek's
> Consultants Contract and is therefore fraudulent as to and avoidable by all [of]
> Fiber Optek's creditors.
>
> 36.  Defendants are collaterally estopped and subject to the principal of res judicata
> from denying the fraudulent conveyance defined by New York Debtor & Creditor
> Law 276 by virtue of rulings in the [Consultants Litigation].

(*Id.* at 12.)  The Trustee and Zarzeka later settled the action between them, leaving Pascazi

as the only remaining defendant.

On July 3, 2003, the Trustee moved for summary judgment "and entering judgment

setting aside the January 28, 2002 fraudulent conveyance" and "ordering Defendant

Michael S. Pascazi to return to the Debtor's Estate of Fiber Optek Interconnect Corp. the

sum of $562,500," that is, the balance of the $625,000 that Pascazi earned from the Settlement Agreement.  (AP D.I. 112).

In a memorandum opinion and order dated as of March 4, 2009 (AP D.I. 133 ("SJ Op.")), the bankruptcy court denied the Trustee's motion for summary judgment and dismissed the adversary proceeding.  The bankruptcy court found that "the legal issues in this adversary proceeding and in the [Consultants Litigation] are identical, *i.e.*, an intentional fraudulent conveyance pursuant to DCL § 276" and that "Justice Brands necessarily decided, as part of the [Consultants Litigation] that Mr. Pascazi was liable on the theory of intentional fraudulent conveyance." (*Id.* at 18-19.)  However, the bankruptcy court noted that "Justice Brands granted summary judgment against Mr. Pascazi only on the third cause of action" but "did not grant summary judgment on Consultants' fourth cause of action, which requested that Neon's transfer of $1.25 million to Mr. Pascazi and Zarzeka should be set aside." (*Id.*)   Hence the bankruptcy court found that "Justice Brands never decided whether avoidance of the entire $625,000 transfer to Mr. Pascazi was warranted – the issue was not decided at all, let alone necessarily decided,'" for Justice Brands's ruling "was limited to a finding that Consultants was entitled to receive its 10% commission on the $1.25 million transferred to Mr. Pascazi and Mr. Zarzeka." (*Id.*)  The bankruptcy court also found that "Mr. Pascazi did not have a full and fair opportunity to contest the relief that the Trustee seeks in this adversary proceeding, which is the recovery of the balance of the $625,000 transfer." (*Id.* at 22.)  Finally, since without collateral estoppel, "there [wa]s nothing left in the Amended Complaint upon which the Trustee can proceed," the bankruptcy court dismissed the adversary proceeding.  (*Id.* at 22-23.)

On March 16, 2009, Appellant filed a timely notice of appeal [1].  (AP D.I. 137.)

**STANDARD OF REVIEW**

This "court reviews the bankruptcy judge's grant of summary judgment *de novo* and views the facts in the light most favorable to the non-movant." *In re Red Dot Scenic, Inc.*, 293 B.R. 116, 118 (S.D.N.Y. 2003); *see also In re Fugazy Express, Inc.,* 124 B.R. 426, 430 (S.D.N.Y. 1991) ("[A] grant of summary judgment by a bankruptcy court is subject to *de novo* review in a district court.").  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In ruling on a motion for summary judgment, the district court is required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  *Kessler v. Westchester County Dep't of Soc. Serv.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir. 2001)).

**DISCUSSION**

The cornerstone of this adversary proceeding is Justice Brands's grant of summary judgment on Consultants' third cause of action.  The Trustee has not pleaded independent facts showing a fraudulent conveyance.  Rather, the Trustee merely recites the history of the Consultants Litigation before Justice Brands and alleges that the grant of summary judgment on Consultants' third cause of action precludes Pascazi from contesting whether the Settlement Agreement effected a fraudulent conveyance.  Thus the Trustee's summary judgment motion turns on application of the doctrine of collateral estoppel.

"Collateral estoppel prevents the litigation of a legal or factual issue already decided in an earlier proceeding."  *Perez v. Danbury Hosp*, 347 F.3d 419, 426 (2d Cir.

2003).   Hence collateral estoppel is also known as issue preclusion, in contrast to claim

preclusion, or *res judicata*, which "precludes the parties or their privies from relitigating

issues that were *or could have been* raised in [a prior] action."  *Allen v. McCurry,* 449 U.S.

90, 94 (1980).[2]  "It is well settled that collateral estoppel applies in bankruptcy

proceedings. . . ."  *In re Hyman*, 335 B.R. 32, 37 (S.D.N.Y. 2005).  *Cf. Grogan v. Garner*,

498 U.S. 279, 284 n. 11 (1991) (holding that collateral estoppel applies in discharge

exception proceedings involving fraud).  Under 28 U.S.C. § 1738, "Congress has

specifically required all federal courts to give preclusive effect to state-court judgments

whenever the courts of the State from which the judgments emerged would do so."  *Allen,*

449 U.S. at 96.   Thus application of collateral estoppel here turns on whether a New York

state court would give any preclusive effect to the legal and factual issues reflected in

Justice Brands's judgment.  *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S.

373*,* 380 (1985) ("This statute directs a federal court to refer to the preclusion law of the

State in which judgment was rendered").

　　　　"Under New York law, collateral estoppel bars relitigation of an issue when (1) the

identical issue necessarily was decided in the prior action and is decisive of the present

action, and (2) the party to be precluded from relitigating the issue had a full and fair

opportunity to litigate the issue in the prior action."  *Evans v. Ottimo*, 469 F.3d 278, 281

(2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985)).

"Generally, under New York law, 'collateral estoppel effect will only be given to matters

actually litigated and determined in a prior action,' because '[i]f an issue has not been

---

[2] In his amended complaint in this adversary proceeding, the Trustee referred to the
doctrine of *res judicata*.  However, the Trustee hardly relied on *res judicata* in its motion
in the bankruptcy court and the Trustee does not appear to rely on that doctrine in this
appeal.  The Court therefore has no reason to consider *res judiciata*.

litigated, there is no identity of issues.'"  *Id.* at 282 (quoting *Kaufman*, 482 N.E.2d at 68).

""[F]or a question to have been actually litigated so as to satisfy the identity requirement, it

must have been properly raised by the pleadings or otherwise placed in issue and actually

determined in the prior proceeding."  *Evans*, 469 F.3d at 282 (quoting *D'Arata v. N.Y.*

*Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 638 (N.Y. 1990)).    Effectively, then, collateral

estoppel applies under New York law when, as under the federal law of issue preclusion in

this Circuit, four requirements are met: "(1) the identical issue was raised in a previous

proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3)

the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the

issue was necessary to support a valid and final judgment on the merits."  *Bank of New*

*York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (quotation marks

omitted).

　　　　The central issue here is whether an identical issue was "actually determined in

the prior proceeding."  *Evans*, 469 F.3d at 281.  The bankruptcy court found that "Justice

Brands never decided whether avoidance of the entire $625,000 transfer to Mr. Pascazi

was warranted – the issue was not decided at all, let alone necessarily decided,'" for Justice

Brands's ruling "was limited to a finding that Consultants was entitled to receive its 10%

commission on the $1.25 million transferred to Mr. Pascazi and Mr. Zarzeka."  (SJ Op. at

18-19.)  Instead, the bankruptcy court focused on the fact that "Justice Brands granted

summary judgment to Consultants on its third cause of action, avoiding the transfer to Mr.

Pascazi and Mr. Zarzeka 'to the extent necessary to satisfy Consultants' claim'—a demand

for damages of $125,000."  (*Id.* at 21.)  The Court agrees with the bankruptcy court, albeit

for a slightly different reason, that Justice Brands never decided the issue of whether the entire $1.25 million should have been avoided.

The analysis begins with Consultants' complaint in the Consultants Litigation. In that complaint, Consultants referred to a fraudulent conveyance in both its third and fourth causes of action. (*See* Trustee Ex. K ¶¶ 48, 55.) However, the other allegations as to those causes of action indicate that the third and fourth causes of action alleged different claims with different elements. The other allegations as to the third cause of action sounded in fraudulent misrepresentation. "The essential elements of a fraud claim are misrepresentation of a material fact, falsity, scienter, reliance, and injury." *RBE N. Funding, Inc. v. Stone Mountain Holdings, LLC*, 911 N.Y.S.2d 115, 116 (2d Dep't 2010). Thus the third cause of action alleged that the Final Commission Reconciliation misrepresented that Neon had paid Fiber Optek only $350,000 when the company had, in fact, received an additional $1.125 million that was directed to Pascazi and Zarzeka by operation of the Settlement Agreement; that Fiber Optek knew or should have known that the Final Commission Reconciliation was false; that Fiber Optek made this representation to mislead Consultants; and that Consultants relied on these representations. (Trustee Ex. K ¶¶ 39-46.)

In its fourth cause of action, Consultants did not make any of these allegations regarding misrepresentations. Rather, consistent with the statutory definition that a "conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors," N.Y. Debt. & Cred. L. § 276, Consultants alleged only that "[p]ayment of the aforementioned $1,250,000 to Pascazi and

Zarzeka directly was made to hinder and delay Fiber Consultants' right to collect Commissions from Optek, pursuant to the terms of the Agreement, in the sum of $1,250,000." (Trustee Ex. K ¶¶ 54-55.)  Hence Consultants' third cause of action was a claim for fraudulent misrepresentation and its fourth cause of action was a claim for fraudulent conveyance.  Importantly, these claims have different intent requirements: whereas a claim for fraudulent misrepresentation requires scienter as to a *statement*, "[f]or plaintiff to prevail on its D.C.L. § 276 claim, it must prove, by clear and convincing evidence: 1) *a conveyance*; 2) made with actual intent to defraud." *Cadle Co. v. Newhouse*, No. 01-CV-1777, 2002 WL 1888716, at *6 (S.D.N.Y. Aug. 16, 2002) (emphasis added).

The above is clear from Justice Brands's opinion.  Justice Brands stated that "[a] third cause of action alleges fraud" while "[t]he fourth cause of action alleges a fraudulent conveyance pursuant to Debtor and Creditor Law 276."  (Trustee Ex. O at 2.).  Indeed, Justice Brands devoted considerable attention to the defendants' defense with respect to the third cause of action that "an action for fraud cannot be intermingled with a breach of contract" and noted that "where principals of a corporation have diverted funds and sought *to conceal* the diversion, a cause of action may lie."  (*Id*. (emphasis added).)  Finally, Justice Brands held that "there [was] sufficient grounds for an *allegation of fraud* . . . ." (*Id*. (emphasis added).)

With respect to Consultants' motion for summary judgment as to this third cause of action, Justice Brands proceeded "to ascertain whether there is a question of fact remaining to determine whether there is justification for the defendants to have individually received $625,000 at the time of settlement without being obligated to pay commissions thereon to

plaintiff." (*Id.* at 5.)  Notably, that inquiry was not whether issues of fact existed regarding the defendants' *intent* in diverting the funds, a required element of a fraudulent conveyance action.  Rather, the inquiry was whether the $1.125 million had actually been paid to and/or received by Fiber Optek and then directed to Pascazi and Zerzeka by operation of the Settlement Agreement such that Fiber Optek's representation that it received only $350,000 was misleading.  Since none of Fiber Optek's counterclaims in the Neon litigation sought compensation for Pascazi or Zarzeka, "they [had] not sought to justify receipt of those monies in any fashion," and Neon ensured that the Settlement Agreement provided that "direction by the corporation to make payments of settlement funds directly to Messrs. Pascazi and Zarzeka," Justice Brands concluded that the Neon Litigation "was, in reality, a dispute between corporations." (*Id.* at 5-6.)  From there, "[i]t [was] a very small leap to find that the payment [was] due to the corporation which then *for whatever purposes* directs that it be paid to the individual defendants" since Fiber Optek "itself recognizes it is corporate income upon which there is a commission due." (*Id.* at 6 (emphasis added).)

Justice Brands's use of the phrase "for whatever purposes" indicates that his analysis was directed to whether, contrary to Fiber Optek's representations, the $1.125 million ultimately paid to Pascazi and Zarzeka had, in fact, first been paid to Fiber Optek such that ten percent of those funds had to be paid to Consultants.  The phrase "whatever purposes" connotes neutrality as to the reason why the funds were ultimately conveyed to Pascazi or Zarzeka.  Indeed, with respect to whether Fiber Optek's statement to the contrary was false, *why* the funds were conveyed to Pascazi and Zarzeka was irrelevant, and Justice Brands did not express any opinion on that issue other than to hold that

14

Consultants stated a claim with respect to its fourth cause of action.  But Justice Brands did not grant summary judgment on that claim.  Accordingly, Justice Brands did not decide whether, as Consultants alleged in its fourth cause of action, the conveyance to Pascazi and Zarzeka—as opposed to the statement in the Final Commission Reconciliation concealing that fact—was made to avoid, hinder, or defraud Consultants as a creditor.[3]

In the present case, the Trustee here must prove that the conveyance rather than the statement was fraudulent.  As to that fact, the Trustee does not plead any independent facts as to why the conveyance was fraudulent.  Instead, the Trustee alleges that Justice Brands already decided that the $1.125 million was conveyed to Pascazi and Zarzeka to avoid or hinder Consultants as a creditor.  He did not.  Accordingly, the bankruptcy court correctly held that "there [wa]s nothing left in the Amended Complaint upon which the Trustee can proceed" and properly dismissed the adversary proceeding.  (SJ Op. at 22-23.)

---

[3] Since Consultants did not have to show why the funds were conveyed, let alone that they were conveyed to defraud Consultants as a creditor, in order to win summary judgment on its third cause of action, to the extent that Justice Brands did express any opinion as to why the funds were conveyed, "resolution of the issue" was not "necessary to support a valid and final judgment on the merits."  *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (quotation marks omitted).

**CONCLUSION**

For the foregoing reasons, the bankruptcy court's order dismissing this adversary proceeding is AFFIRMED.


SO ORDERED.


Dated: New York, New York
       March **31**, 2011

_____
                Richard J. Holwell
            United States District Judge